Good morning. Good morning, Your Honors. I'm Jim Tree, and I represent Luanna Stubbs-Danielson. I would like to reserve two dollars, two minutes for rebuttal. Two dollars? I got excited. It's the going right now. I hope you get more than two dollars an hour. I know it's a tough business. Go ahead. Thank you, Your Honor. Ms. Stubbs-Danielson is limited to a slow pace in both her thinking and her actions. I think this is an undisputed fact in this case. However, we don't believe that it was properly accounted for in the ALJ's RFC, his RFC finding being for simple, routine, repetitive work without any interaction with the public at the sedentary level. There was no mention of pace in the RFC. Well, why shouldn't we follow Howard, then, if that being the case? Because in this particular case, Your Honor, there is specific evidence that the limited pace for the types of jobs that the vocational expert identified she could do would significantly impact the ability to do those jobs. The only jobs that the vocational expert identified at the sedentary level were assembly and packaging sorter type jobs. There's specific reference in the file in the exhibit, Your Honor, in the transcript, excuse me, to page 238 or, excuse me, 235. Dr. Johnson, psychologist, did perform testing. And Dr. Johnson said she could perform assembly tasks that are rote and repetitive. And this is the kicker. However, the pace at which she is able to work will prevent her from being able to sustain work in a competitive employment setting. Dr. Johnson went on to say if it was a job that was slow-paced, like maybe janitorial job, she might be able to do it. But her sedentary RFC eliminates her from doing those types of jobs. The only jobs that she could do are jobs where they require a significant production pace in assembly and sorter type jobs. By their fundamental nature, those types of jobs require a fast production pace, certainly not a slow production pace. In this particular case, we're at the fifth step of the sequential evaluation, where the burden has shifted to the commissioner to identify jobs that she could perform. Didn't he identify jobs? He identified assembly jobs and sorter packager jobs were the only jobs that were identified. You're saying they should be more specific, correct? That was one of our arguments, yes. In what respect? We believe that a reviewing court needs to be able to analyze the specific jobs that are identified. The courts have held that the judge has a duty to identify specific jobs. In this case, they just identified broad occupational categories. For example, in this respect, Your Honor, assembly jobs in the index, the dictionary of occupational title, there are listed 184 specific assembly jobs. 182 of the 184 are done at the light, medium, and heavy level. Only two are sedentary, unskilled jobs out of the 184. Now, did she object? Did she object? No, she didn't object to that. But why shouldn't we just shut the door with waiver? I mean, you've got some sort of responsibility there. If it had been at step four, I would agree, Your Honor, where the burden is on the claimant to come forward. In this case, the claimant did come forward and met their burden at step four that there were no past works she could do. In this case, the burden then shifts to the commissioner to prove that there are jobs that she can do and the commissioner did not meet their burden. Did, when this was taken to the appeals council, was it raised before the appeals council that these were, that the jobs designated were just too broad in category? I don't believe so, Your Honor, but there is a Supreme Court case that says that you don't waive any issues by not bringing them to the appeals council. Well, what I'm trying to find out is along the same line. It seems to me a horribly inefficient way to do this process for people to sit on their hands when the vocational experts call and say, well, she can do X and Y. And we're talking about cross-examining. And they say, fine, that's what he says. It goes through. The LJ makes a decision. And then you wind up in the Ninth Circuit saying, oh, well, that was too broad a category when you could have raised it back then by cross-examination or by the appeals council somewhere and saying to the administrators, you know what? You can't give those kind of broad designations. That seems like a pretty lousy way to run the system. Your Honor, we didn't know the ALJ was going to violate what the law says, specific categories, until he wrote his decision. We had no way of knowing that. Well, that can't be true. He asked the vocational expert, are there jobs in the community she can do? And the vocational expert said, yes, there are these and these. What did you expect the ALJ to do then? He had given that information to say, oh, well, that's too broad. He doesn't raise it then. The lady says it's too broad. Although nobody's ever said to him, that's too broad a category. And although we see an awful lot of cases where that's the kind of categories that the vocational experts give, I've rarely seen a vocational expert just pick one or two little jobs within a whole constellation. They give sort of general stuff. They're a small packager. There are a thousand of those jobs in the ______. That's what they do. So you're saying you really expected that that wouldn't happen, right? Well ______. Nobody should raise it to the administrative agency, just sort of wait and hit them over the head when you get to court, right? No, I don't think so. We did provide specific evidence that she had a slow pace. That wasn't in the judge's RFC. We provided vocational expert evidence from our own vocational expert, Roger Wentz, who stated that a person with this problem with the pace would not be able to sustain work. That's in the record. That is the only thing the judge rejected. The judge didn't reject in his decision that she had a problem with slow pace. He accepted that. He accepted Dr. McCollum's report that she has problems with her pace. Well, I think if we follow Howard, I think you have a problem. If we don't follow Howard, I think you have a point. That would be the way I see it. Is this your strongest argument as to the Step 4, Step 5 analysis? You also raised the issue of claim preclusion, or race judicata, concerning the prior finding with regard to disability before she went into custody. Yeah, I think that's an important argument, Your Honor, because in Chavez this court stated that the principles of race judicata apply to administrative decisions. Well, what about, though, I have a problem with that argument because in this situation she was previously found to be disabled, but her benefits were suspended by regulation due to her incarceration, correct? Correct. And according to the regulations, the commissioner presumed her continued disability for 12 months during the suspension but terminated benefits in the 13th month. And that's 20 CFR section 16.1335, I think. By rule, therefore, Danielson's lost any presumption of continued disability once her benefits were officially terminated. Why shouldn't we defer to the regulation that squarely addresses this issue? I mean, particularly in the broader sense, I mean, disability is really something that can change. I mean, a person, for example, one that we commonly see is fibromyalgia. Well, now they have apparently, I don't know if it really works, but I watch TV and I've actually heard some people say they're taking this new medication that's really helping them. So a person that's disabled at one point may not be disabled at another point. So why would we want to have a public policy that once you're determined to be disabled you are forever disabled even though, you know, there could be some miracle drug that puts you in a better position and so let's have the government support you for the rest of your life because at one particular point, you know, there was a confluence of events that made you disabled. Yeah, I agree with all of that, Your Honor. I don't think we should have such a law. I think what the law has enunciated in Chavez is that we have to show changed circumstances. What about Warren? Warren, there was changed circumstances, Your Honor. That was before Chavez. It was before Chavez and it's directly on point. We recognize the cases that said it's race judicata. We said you're not disabled. They recognized everything and just plain said, in this area, you're out. Well, okay, here's the deal with Wren. Are you saying that the ALJ should have at least looked at or given some credence to the prior disability finding? Yeah, he should have. In Chavez it says it's very easy for the Social Security Administration to get the prior file and look at it, and it would have been a very easy thing for him to get the prior file. He should have looked at it. He should have seen if there was changed circumstances. If there was, as there was in Wren, she went back to work. She had different past relevant work. That certainly changed circumstances. The reason she was terminated, because she worked. She should be taken off of benefits. There's no question. This person should have ought to, shouldn't, we're not saying that she should automatically be put back on benefits. We're not saying that at all. But just as in Chavez, then there should be a weighing made and you should look at the prior file, see what was the RFC in the prior file, see if there were any changed circumstances. They may very well be, but none of that process was done. We do it the opposite way. When a person is denied, then this process has to go through. It seems like it's not due process or equal protection of the laws if we only do it one way. We should do it both ways, and it's not an overburdened process. We think these regulations should still apply. We're not questioning the 12-month rule, the suspension rules, the termination rules. It's just if she decides she wants to reapply, when she reapplies, they should get the other file and see if there's been changed circumstances. It should be part of the process. And then that would be equal on both sides of the equation as far as race judicata goes. Right now it's one-sided only. All right. You know, heads you win, tails you lose. Your time's up, unless there are further questions from the panel. Thank you. Your Honor, I was just wondering, do I get my two minutes rebuttal? Because when that question is asked. Actually, the time is our time, right? It's our time to ask you the questions that we have. I understand. So unless, if after there's, after appellee makes his arguments, if any of my panel members have any questions they want to ask you, I will allow you a brief time. But otherwise. If they did, I had an important part on the pace. Well, don't tease us. That's what, yeah, that's the. Good morning, Your Honors. David Johnson for the Commissioner Michael Astru. Even without Howard, this case should be affirmed in that Dr. McCollum associated Ms. Stubbs Danielson's slowed pace with complexity and distraction. The residual functional capacity finding by the administrative law judge accounted for, eliminated jobs or demands of complexity and distraction. He eliminated complexity with a restriction to simple work. Eliminated variation with a limitation to routine work. He eliminated any concentration of novel tasks with repetitive work. And he eliminated any distractions with a limitation to no public interaction. It's from Dr. McCollum's narrative from his testing that we gain more insight than from the checkbox form where moderate was checked. The moderate is explained by the testing and the narrative. And Dr. McCollum said she had fair concentration but thinks slowly. In other words, if she didn't have to think of the job, if she didn't have to look at a number of things and multitask or deal with distractions from the public, then her pace would not have been slowed. In addition, Dr. McCollum. Wasn't pace the big issue, though? Wasn't pace the biggest issue as far as what she could do? Pace becomes the big issue because, yes, it's categorized on a checkbox form. And pace is what most of the RFC is meant to address, in addition to the sedentary limitation of physical, certainly. But I think it's more expository to understand pace as it applies to Ms. Stubbs Danielson's condition. Who knows that better than the treating physician who tested her and who talked about it in detail versus checking the box in the middle of neither high nor low? So her pace is slowed when she is faced with other challenges. What about the specificity of jobs in the regional and national economy? Ms. Stubbs Danielson asked this court to bring in a step four analysis, that is that from Social Security ruling 80, I'm sorry, I've lost the place, bring in a step four analysis that broad categories are likely to be fallacious and unsupportable. The reason why that doesn't apply at step five is, as the Supreme Court noted in Barnhart v. Thomas, step five is a more individualized analysis. Here there was a vocational expert who considered the record, who heard the testimony, who testified that a person with these limitations could do these types of jobs. Those precautions about broad categories likely being fallacious and unsupportable exist at step four because there is generally no vocational expert at step four. There's no vocational expert required. In fact, well, there's no vocational expert usually at step four. When we have the more individualized analysis at step five and we're not doing the proxy at step four, then those safeguards are unnecessary. Is there any limit on how broadly the vocational expert can opine? Certainly. But Moncada and Johnson both have talked about what is acceptable, and they're similar to this case in that the vocational expert might identify jobs which have light job classifications in the Dictionary of Occupational Titles, but based on the vocational expert's expertise and testimony, they were able to provide at least more than a scintilla, a substantial amount of evidence, which is what's required, that this claimant could do this job. Additionally, in this case... So in other words, when the vocational expert says small product assembly jobs, which are 1,000 statewide, et cetera, we assume that he said small product assembly jobs for somebody with her particular limitations? We know that because... Top of my head. Well, then the vocational expert would analyze those words. In this case, the vocational expert was provided with a hypothetical, which reflected the residual functional capacity finding. Right. And if there's a difference between can't handle fast pace and needs work that is only simple, repetitive, routine, and non-public, then maybe the vocational expert would give a different answer. I submit there's not a difference, and, in fact, simple, repetitive, routine, and non-public is more exacting to Ms. Stubbs-Danielson's condition than the check box of moderate limitation in pace, which also doesn't say can't handle a fast pace. I'm trying to remember because we have different cases. Is this a case where, in the briefs, the petitioner lists a bunch of jobs that obviously she couldn't do, and you folks came back and listed a bunch of jobs that obviously she could do, and so we're going to say, well, she can't do this job, and that comes within simple, repetitive work. Is the answer that the number of jobs would have been cut down by the vocational expert, presumably? No. To take an account of that? Okay. He says 1,000 jobs of small product assembly. Theoretically, he's already factored out all those jobs that they chose that she can't do? Yes. That's right. That would be the theory? That's right. And if they don't think so, then they would have to cross-examine and raise that? Is that true? We would say that's absolutely the best place to do it, to solve the issue, and we believe Ms. Stubbs-Danielson speaks too broadly when she says the only burden that exists is the commissioner's burden at Step 5. At Step 5, the commissioner has the burden to produce evidence that other jobs exist that Ms. Stubbs-Danielson could do in light of her residual functional capacity, and then the claimant always has the burden of proving disability, that is, showing why that testimony was erroneous or wrong, and the easiest way to do that would be the simple question of the vocational expert. After the testimony of small products assembly jobs or packaging and sorting jobs, the simple question of what jobs? Could you be more specific, please? And that would have solved the issue. For this case, we believe that's even unnecessary in that this case is like HUPAI, where there were similar moderate limitations. In fact, HUPAI may have had greater, a larger number of limitations and more categories that were moderate, and yet the court there stated that reliance on the medical vocational guidelines alone without vocational expert testimony would have been sufficient. In addition, we have a particularized assessment in response to an exacting question about her capabilities. We had an answer that she could do jobs in these categories, and, yes, the numbers that were given factored out the jobs in those categories that Ms. Stubbs-Danielson could not do. We assume that. You're saying we assume that. Do we know that? Are there only 100,000 small assembly jobs nationwide, period, and gross? No. The vocational expert was testifying in response to a hypothetical. Are there any jobs that a person with these limitations could do? How many? Is it your position the hypothetical was appropriate? It didn't leave? I mean, she's saying the hypothetical was not complete. That's right. And you're saying it was. I mean, it's pretty general, but that it included all of the issues that had been brought up before about her limitations. PACE itself is not a work-related limitation. Simple work, repetitive work, routine work, non-public work, those are work-related limitations. And to add the word PACE, aside from it not being specifically a work-related limitation, wouldn't, I think, and I think we can draw from the evidence from Dr. McCollum's opinion, wouldn't have changed vocational expert's answer because it wouldn't have said anything new. PACE is accommodated by simple, repetitive routine and non-public. What do you have to say about the race judicata issue? There is no presumption of continuing disability in the law, and Warren states that clearly. What about Chavez? Chavez established one presumption only, that of continuing non-disability, and the converse cannot be true. If we presume that people admitted to a hospital are sick, to presume that people not admitted to a hospital are not sick would not make logical sense. The commissioner has stated their opinion about Chavez in the acquiescence ruling. We're willing to abide by it. But a presumption that a medical condition does not change for better or for worse over time doesn't make logical sense. And it's also contrary to the presumption that's applied with medical improvement review cases, which are performed every six to 18 months, depending on the situation, similar to the 12-month presumption for incarceration terminations. All right. Your time has expired unless the panel has any additional questions. Thank you. Thank you. Did either of you have any additional questions of Appella? No. No? Sorry. All right. This matter will stand submitted. Thank you both for your argument.
judges: Fernandez, Callahan, Gonzalez